HILDA SCHEIB, ESQ.
SBN 96081
P. O. Box 29098
San Francisco, CA 94129
415-750-9397

Attorney for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ALAS,<br><br>    Petitioner,<br><br>v.<br><br>WILLIAM SULLIVAN, Warden,<br>The Attorney General of the State of California,<br>Jerry Brown,<br><br>    Respondents | ) Civ. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITION UNDER 28 USC SECTION 2254
FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**

    Petitioner DANIEL ALAS petitions for a writ of habeas corpus pursuant to 28 USC § 2254 and by this verified petition states as follows:

    1. Petitioner is unlawfully restrained of his liberty in the California Correctional Institution at Tehachapi, CA by the warden and the director of the California Department of Corrections and Rehabilitation (CDCR);

    2. Petitioner is restrained under a judgment of conviction of second degree murder (Pen. Code § 187), rendered in San Francisco County Superior Court, case number 175916, following a not guilty plea and jury trial on the substantive offenses

and a court finding on the prior serious felony allegations. On June 15, 2004, the trial court imposed a sentence of 36 years to life, consisting of 15 years to life for second degree murder, doubled pursuant to Penal Code § 667, subdivision (d), another year for weapon use (§12022, subd.(b)(1) and 5 years pursuant to § 667, subdivision (a).

    3. Petitioner appealed to the California Court of Appeal, First Appellate District. On January 30, 2006, in an unpublished decision, Division Four of the Court of Appeal, First Appellate District, affirmed the judgment in its entirety. In his appeal, petitioner raised the following grounds: (1) appellant was denied his right to present a defense when the trial court refused to allow the reading of the testimony from appellant's first trial of an expert witness who was unavailable to testify; (2) if the trial court did not err, then trial counsel was ineffective for failing to secure another expert, failing to ensure that the facts underlying the hypothetical were presented in the present trial, and failing to request that the former testimony be redacted and admitted at the present trial; (3) petitioner was denied his right to a fair trial when the trial court made a hostile and disparaging remark to defense counsel; and (4) the trial court committed prejudicial error when the trial court responded to a jury question by directing jurors to instructions which did not include any of the lesser charges or petitioner's defenses.

    4. Petitioner petitioned the California Supreme Court for review in case number S141695, raising the same grounds raised in the Court of Appeal. Review was denied on April 26, 2006.

    5. No petition for certiorari was filed in the United States Supreme Court.

    6. No other petitions, applications or motion have been filed with respect to this judgment in any state or federal court or are currently pending.

7. At pretrial, trial and sentencing, petitioner was represented by:

Robert Graham, Esq.
4426 25th Street
San Francisco, CA 94114

8. On appeal, petitioner was represented by:

Hilda Scheib, Esq.
SBN 96081
P. O. Box 29098
San Francisco, CA 94129

9. Petitioner was not sentenced on more than one count of an indictment, or by more than one indictment in the same court and at approximately the same time.

10. Petitioner has no future sentence to serve after completing the sentence imposed by judgment under attack.

**PRAYER FOR RELIEF**

Wherefore, DANIEL ALAS respectfully asks this Court to:

1. Order the respondent to produce the record on appeal and other relevant records in this case;

2. Issue a writ of habeas corpus to have petitioner brought before it to the end that he may be discharged from his unconstitutional confinement and restraint; and

3. That the court grant petitioner such other relief as may be appropriate and dispose of the matter as law and justice require.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, CA on July 24, 2007.

---

HILDA SCHEIB

**VERIFICATION**

I, HILDA SCHEIB, declare:

I am a member of the State Bar of the State of California and prepared this petition. I am making this verification on his behalf as he is incarcerated outside of this county and because the matters alleged here are more within my knowledge than his. The allegations of this petition are based on the record on appeal in *People v. Alas, A107662 and S141695*.

I have read the foregoing petition and hereby verify that the facts alleged are true of my own personal knowledge. I certify under penalty pf perjury that the foregoing is true and correct. Executed in San Francisco, CA on July 24, 2007.

_____

# MEMORANDUM OF POINTS AND AUTHORITIES
## PROCEDURAL SUMMARY

Petitioner was originally charged by information with one count of murder, as well as a deadly weapon use and prior serious felony enhancements. Following conviction by jury of second degree murder and true findings by the court o the prior felony conviction allegations, the Court of Appeal, First Appellate District, Division Four, reversed the judgment of conviction [*People v. Alas,* July 17, 2002, A092582 (unpublished opinion)], and the finding of guilt was set aside. Petitioner was retried by jury on second degree murder charges. This petition raises issues with respect to this second trial.

## STATEMENT OF FACTS

**Prosecution Case**

On the night of November 21, 1998, following hours and hours of heavy drinking, petitioner attempted to enter the Roaring '20's strip club on Broadway in San Francisco, accompanied by his brother, Richard. After a misunderstanding between Richard and a female employee, two patrons stopped petitioner from entering, then began pushing and taunting him. After someone left to call the manager, Anton Segal, who served as greeter/bouncer/doorman at the club, placed his hand on petitioner's shoulder, tried to calm him down and suggested that he return when he was sober. Petitioner pushed Segal's hand away, then walked away. His brother had already left.

Several minutes later, petitioner was nearly struck by a car as he crossed Broadway. Petitioner yelled at the car's occupants, one of whom got out. Petitioner threw a beer can at him. Two other men got out of the car and began punching,

kicking and stomping on petitioner, who lay on the ground in the middle of the street. One of the men grabbed petitioner's coat and drove away. A bystander heard people on both sides of Broadway yelling taunts at petitioner and "pumping him up to fight" – "Get him," and "You're going to let him do that to you?" Petitioner, stunned and disoriented, ran toward the Broadway tunnel.

The same bystander saw appellant pull up to the curb some 10-15 minutes later. Petitioner left the engine running as he ran with a car club in his hand. He crossed the street to the side door of the Condor club, then stood next to the hotel at the corner, which the bystander interpreted as his looking for someone. Petitioner then went to Big Al's, another club in the immediate vicinity.

Back at the Roaring '20's, an employee saw petitioner standing behind four people who were paying to enter the club. She called out to Segal, "There he is." She said it again, this time more urgently. Segal walked toward her, telling her to get the manager. Just as he walked past petitioner, petitioner hit Segal in the head.

Meanwhile, the patron who had initially argued with petitioner saw Segal standing on the curb and saw petitioner run up from behind him. He then saw a red flash from a pipe wrench-like object in petitioner's hands, the saw petitioner strike Segal on the right rear side of the head. He saw petitioner run off. The bystander saw him return to the van and speed away.

Segal died several days later of craniocerebral trauma. According to the doctor who treated him, his death was consistent with the delivery of one blow.

**Defense Case**

Petitioner testified that he had been drinking all day and night. As petitioner and his brother Richard shared a twelve-pack on the street, two men said insulting

6

things to Richard. Petitioner, who was extremely protective of his brother, who had suffered a serious car accident in 1982 and had mental difficulties as a result, exchanged words with the men, but the situation was diffused by petitioner's cousin. Petitioner and Richard continued drinking while they headed to Broadway.

At the Roaring '20's, the two patrons taunted petitioner and jeered at his brother. When petitioner pushed Segal's hand away, Segal jumped back and assumed a fighting stance. Petitioner walked away. Minutes later, he was attacked by the occupants of the car that nearly hit him. In the course of the attack, petitioner was hit on the head with something metal. He chased the van when he realized the men had taken his leather coat.

After recognizing that the car and his coat were gone, petitioner went searching for his brother. When, in front of the Roaring '20's, he heard the female employee yell, "There he is," he became scared and believed he was personally in danger. Seeing someone coming toward him, petitioner perceived it as an attack and a continuation of the previous attack. He hit the person with one quick motion. He did not recognize Segal at the moment he hit him. Petitioner then drove away.

When arrested on December 4, 1998, appellant did not recall leaving the car engine on or taking the car club with him when he went searching for his brother.

## GOVERNING AEDPA STANDARDS

The petition is subject to the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Lindt v. Murphy, 521 U.S. 320, 326 (1997). Under the AEDPA, the district court may reverse a state court's decision denying a petitioner relief only if that decision is "contrary to, or involve[s] an unreasonable application of clerly established Federal law as determined by the Supreme Court of the United States.

*Anthony v. Cambra*, 236 F.3d 568, 578 (9th Cir., 2000); 28 U.S.C. § 2254(d)(1).

A state court's decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Suprem Ecourt and nevertheless arrives at a different result. *Early v. Packer*, 573 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000).

A state court's decision involves an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams v. Taylor, supra,* 529 U.S. at 413.

The "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under 2254(d)(1) – whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Lambert v. Blodgett*, 393 F.3d 943, 975 (9th Cir., 2004) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

## ARGUMENT

**GROUND ONE: Appellant was denied his Fifth, Sixth and Fourteenth Amendment rights to present a defense by the trial court's refusal to allow the reading of the testimony from the first trial of an expert witness who was unavailable to testify.**

A. Relevant Facts

During in limine motions, defense counsel requested the right to present voluntary intoxication evidence, to which the prosecution did not object. Defense

8

counsel informed the court that he had subpoenaed Dr. Randy Baselt, who had testified at his first trial, and was continuing in his efforts to locate the expert. Defense counsel notified the court that if, however, he was not found, he would be asking for a finding of due diligence and for the introduction of Dr. Baselt's prior sworn testimony. The prosecution made clear that it would contest a finding of unavailability should the expert not be produced. (RT 19-21)

Subsequently, the court held testimony from the defense investigator regarding efforts to locate Dr. Baselt. Defense counsel too indicated that he had made extensive independent efforts to reach the witness. (RT 345-359) The court reviewed the witness' prior testimony as well as relevant case law and concluded that defense counsel's efforts qualified as due diligence. (RT 362) Still, the court indicated that it was not yet prepared to allow reading of the testimony "because there's no foundation that has been established as far as the factors of the hypothetical." (RT 362) Defense counsel stated that he would continue attempting to secure Dr. Baselt's presence. (RT 363)

Prior to the close of the defense case, trial counsel once again renewed his request to submit the testimony of Dr. Baselt given at the earlier trial. The court denied the request, finding that, although due diligence had been proven (RT 532), the foundation for the question asked of the witness during the prior case was not established here, in that there was no indication of the precise amount of alcohol consumed by appellant that day. (RT 525) Therefore, the court could not "reasonably extrapolate from that any meaningful testimony by the expert witness." (RT 526) Defense counsel asked for a body attachment of Baselt, bu the court found that effective service had been made pursuant to § 1328(d). (RT 531)

9

Baselt never appeared and never testified at trial.

B. Applicable law

By not allowing the submission of the testimony of the unavailable witness, the court deprived petitioner of critical corroborative evidence on the intoxication defense. As such, the court's actions deprived petitioner of his Fifth and Fourteenth Amendment rights to a fair trial and his Sixth Amendment right to present a defense. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *Washington v. Texas*, 388 U.S. 14, 18-19 (1967); *Alcala v. Woodford*, 334 F.3d 862 (9th Cir., 1991) [exclusion of expert testimony on hypnosis violated the defendant's due process right to a fair trial and to present defense].

Contrary to the court's conclusion, there was ample testimony on the amount of alcohol petitioner had consumed sufficient to justify admission of Baselt's prior testimony. Richard Alas testified as to petitioner's consumption, as well as to their purchase of two 12-packs of beer, which they shared. (RT 269-270) Petitioner testified that he had been drinking all day prior to meeting his brother, and that they then had a couple of beers at a bar, prior to purchasing and consuming the two 12-packs. (RT 366, 368, 369, 382) While evidence of petitioner's history of drug and alcohol abuse was not before the present jury, this should not have barred presentation of Baselt's testimony, if necessary in redacted form to remove those portions not relevant to the present trial. As the court itself recognized, Baselt was "a pretty important witness, as far as the defense goes." (RT 361) When voluntary intoxication is a key defense, the defendant is entitled to present expert testimony because facts relating to voluntary intoxication are beyond common knowledge. The court had found that defense counsel had exercised due diligence in trying to secure

his presence. (RT 361)

Disallowing the evidence effectively removed the defense of voluntary intoxication. Without an expert to explain its effects, particularly when coupled with the adrenalin rush from the car incident, the district attorney had free rein to argue that petitioner was only mildly intoxicated. (RT 437, 440) The error was not harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967). Without the guidance of the expert in assessing the nature of intoxicated behavior, jurors, guided by the district attorney, may well have relied on insubstantial notions of how people behave and of what they are capable in an intoxicated state. The testimony of Baselt would have precluded this.

**GROUND TWO: If the trial court did not err in not admitting Baselt's testimony, then defense counsel was ineffective for failing to secure an expert to replace him, failing to ensure that the facts underlying the hypothetical were presented at the present trial, and failing to request that the former testimony be redacted, thereby violating petitioner's Sixth Amendment right to the effective assistance of counsel.**

A. Facts.

At the earlier trial, Dr. Baselt testified based in part on a hypothetical which relied on data tracking petitioner's alcohol consumption on the date of the incident, as well as on petitioner's encounter with the car passengers, as well as on his prescription drug consumption. In the present trial, defense counsel attempted to subpoena Dr. Baselt to testify or, alternatively, in the event the doctor was not available, to have his testimony from the prior trial read to the jury. Both efforts proved unsuccessful. Defense counsel was unable to secure Dr. Baselt's presence at trial. He was also unable to convince the trial court to allow Baselt's prior testimony to be read to the jury, not because due diligence had not been proven, but because the

foundation that served as the basis for Baselt's hypothethical had not been presented in the current trial. (See, Ground One, supra.)

B. Relevant Law

Under the Sixth Amendment, a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent and conscientious advocate. The law requires not only some assistance, but effective assistance. *Strickland v. Washington*, 466 U.S. 668, 686-688 (1984).

Though petitioner's intoxication was a key element of his defense, trial counsel failed to (1) arrange for another expert to testify in Baselt's place, even after it became increasingly obvious that Baselt would not appear; (RT 355-358) (2) present evidence at the present trial that would have made Baselt's hypothetical admissible (RT 362, 366-368, 382); and (3) request that the trial court redact the prior testimony so that at least that portion for which a foundation existed would have been admitted at the present trial.

As such, defense counsel was ineffective under *Strickland*. As the court itself recognized, the expert on intoxication was "a pretty important witness." (RT 361) Defense counsel could have had no tactical purpose for taking any or all of these steps to ensure testimony on voluntary intoxication was heard by the jury. The error undermined confidence in the outcome of the trial. Without expert testimony, the jury had no means of assessing the extent of petitioner's impairment. The absence of the expert testimony also had a severe negative effect on the issue of petitioner's credibility. Petitioner's inability to remember certain events while remembering others, for which Baselt could have provided a scientific explanation, instead became a means for the district attorney to argue fabricated loss of memory. The defense of

voluntary intoxication was in effect removed from jury consideration. As such, defense counsel's ineffective assistance severely impacted the outcome of the case.

**GROUND THREE: Petitioner was denied his Fourteenth Amendment right to a fair trial when the trial court made a hostile and disparaging remark to defense counsel.**

A. Relevant Facts

During the cross-examination of prosecution witness Melvin Watson, defense counsel apparently concluded his questioning and the prosecutor also indicated that he had concluded his cross-examination of the witness. Defense counsel then said, "Just one more thing. I apologize." The court replied, "Counsel, I've warned you before. You are running the show here, not the defendant. You are the only person here of the two of you licensed to practice law, as far as I know. But go ahead." Defense counsel then asked a single question. (RT 180)

That the comment was heard by and enormously impacted those present at the trial, obviously including the jury, is evident by the statement of Segal's father at sentencing. Addressing the judge and urging a maximum sentence, Segal said in reference to petitioner, "You saw him. I think you chastised him actually, when he's running the defense, *working the system.* He talks to his lawyer; hands him notes; shows him files; he argues his case. *He's used to working our system."* (RT 576; emphasis added.)

B. Relevant Law

By its remarks, the court cast serious aspersions on defense counsel's handling of the case, and by implication, on the case itself. The court's comments also denigrated petitioner, as evidenced by the conclusion reached by Segal's father, i.e., that petitioner's consultation with his attorney and active participation in his

13

defense were improper and perhaps unlawful. By condeming petitioner's behavior in conversing with his lawyer regarding the presentation of his defense, the court transformed petitioner's constitutional right to counsel into what was understood as petitioner's "working the system."

The error infringed on petitioner's right to counsel (*Strickland v. Washington, supra*, 466 U.S. 668, 684) as well as on his due process rights under the Fourteenth Amendment to a fair trial. Given that the error was not harmless beyond a reasonable doubt (*Chapman v. California, supra*, 386 U.S. 18, 24), reversal is necessary.

**GROUND FOUR: Petitioner was denied his right to due process of law when the trial court responded to jury inquiry by directing the jury to consider instructions which did not include any on lesser charges or petitioner's defenses.**

A. Facts

On the morning of the second day of deliberations, the court received the following note from the jury:

> A juror would like the definition of "intentional act" as it applies to this trial versus "intent to kill" clarified.
> Specifically, in implied malice, does the intention pertain to the act of striking the victim, or must it also include the intention that the blow would be fatal? (RT 536; CT 230)

In response the court directed the jury to reread CALJIC Nos. 8.11 and 8.31 and to advise the court if it had further questions. (RT 536-537) Defense counsel had objected to the court's limitation on the response to the two instructions; he had requested that CALJIC 8.40 be read as well. (RT 537) The jury returned its guilty verdict shortly after the court's response. (CT 230)

B. Relevant Law

A defendant's right to the due process of law includes a trial judge's duty to clarify explicit difficulties in understanding the law. *Bollenbach v. United States*, 326 U.S. 607, 612-613 (1946); *McDowell v. Calderon*, 130 F.3d 833 (9th Cir., 1997). The trial court in this case failed in this duty. In this case, the jury's inquiry indicated confusion between the terms "intentional act" and "intent to kill." These terms arise in the instructions on second degree murder, voluntary manslaughter and involuntary manslaughter. CALJIC No. 8.11 define malice, either express or implied and includes the term "intentional doing of an act.." The terms raised by the jury are also included in CALJIC 8.30, relating to second degree murder. "Intent to kill" also arises in CALJIC No. 8.40, the instruction on voluntary manslaughter which defense counsel had requested also be reread to the jury in response to their question. Finally, CALJIC No. 8.45, relating to involuntary manslaughter, also includes language relating to intent to kill and intentional act. Though the jury's question asks for clarification as to the distinctions betwen "intent to kill" and "intentional act," the court failed to reread the manslaughter instructions to them, restricting the response instead solely to the murder instruction.

Petitioner's due process rights were violated by a response that was not balanced or even-handed. *See, United States v. Miller*, 546 F.2d 320, 324 (9th Cir., 1976) [reversal of conviction because the trial court, in response to a jury's request to rehear instructions on credibility, omitted one]. The error in omitting relevant instruction is particularly important on reread, as the jury relies more heavily on them. By failing to read the manslaughter instructions, the court directed the jury to the second degree murder offense, but no other options. It not only omitted those

15

instructions but also failed to instruct on the distinctions between murder and manslaughter (CALJIC 8.50), failed to advise of the benefit of the doubt in the context of a lesser offense (CALJIC No. 8.72) and failed to remind jurors of the order of deliberations (CALJIC No. 8.75).

By failing to fully instruct the jury on reread, the court violated petitioner's right to due process of law.

## CONCLUSION

On these grounds, petitioner respectfully requests that the petition for writ of habeas corpus issue.

Dated: July 24, 2007

                                                  Respectfully submitted,

                                                  Hilda Scheib

## CERTIFICATE OF SERVICE

     I, HILDA SCHEIB, am an attorney licensed to practice law in the state of California and not a party to the within action. My business address is P. O. Box 29098, San Francisco, CA 94129. On July 25, 2007, I caused to be served PETITION FOR WRIT OF HABEAS CORPUS UNDER 2254 on:

State Attorney General
455 Golden Gate Avenue
San Francisco, CA 94102

by placing a true and correct copy in a sealed envelope, with first class postage thereon fully prepaid, and deposited in the United States mail at San Francisco, CA.
     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 25th day of July, 2007 in San Francisco, CA.

_____

Case 3:07-cv-03811-SI   Document 1   Filed 07/25/2007   Page 18 of 18